THE ELECTRIC STORAGE BATTERY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63010. Promulgated January 19, 1939.

*J. Marvin Haynes, Esq., C. J. McGuire, Esq.,* and *W. C. Magathan, Esq.,* for the petitioner.

*John D. Kiley, Esq.,* for the respondent.

124

128

## OPINION.

Black: Upon the facts as above recited petitioner contends primarily that it is entitled to deduct from its gross income for 1929 as additional compensation the difference between the fair market value ($842,802) of the 10,342 shares of its common stock which it issued to its employees under the plan during 1929 and the amount ($333,374) paid to petitioner by its employees under the plan in respect to the 10,342 shares. This difference amounts to $509,428. The respondent contends that the issuance of stock in 1929 under the plan should, as far as petitioner is concerned, be regarded merely as the delivery of stock previously "purchased" by petitioner's employees in 1926 and 1927 at a total purchase price of $584,110, and that in so purchasing the stock no element of additional compensation was involved and petitioner is entitled to no deduction by reason thereof. The applicable statute is section 23 (a) of the Revenue Act of 1928, the material part of which is set out in the margin.[1]

We do not think petitioner's primary contention contained in assignment of error (a) can be sustained, nor do we think respondent's position that petitioner is entitled to no deduction as additional compensation paid to its employees by reason of the stock transactions with its employees is sound. For reasons which we shall state later on in this opinion, we think petitioner's assignment of error (b) should be sustained.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) *Expenses.*—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *.

There are many Board and court cases which deal with various phases of the question which we have here to decide and with other questions related to it. Some of these cases are cited by petitioner in its brief and some are cited by respondent in his brief. We have read all the cases cited in both briefs and other later cases which are not cited in either brief. We do not think it would be profitable to undertake to discuss all of these cases in detail or to endeavor to reconcile some apparent conflicts in them. Each such case, as has often been said, depends upon its own particular facts.

However from a reading of these various cases we think their holdings may be classified in about this way:

(1) Where the facts show that the stock transaction between the corporation and the employee is an outright sale of the stock to the employee, no income results to the employee by reason of the purchase even though the fair market value of the stock is greater than the price which the employee paid for it. And by the same reasoning the corporate employer is not entitled to a deduction, as compensation paid to the employee, of the excess fair market value of the stock over the price which the employee paid for it. Cf. *Rose* v. *Trust Co. of Georgia*, 28 Fed. (2d) 767; *Durkee* v. *Welch*, 49 Fed. (2d) 339; *Gardner-Denver Co.* v. *Commissioner*, 75 Fed. (2d) 38; certiorari denied, 295 U. S. 767; *Irving D. Rossheim* v. *Commissioner*, 92 Fed. (2d) 247; *Delbert B. Geeseman*, 38 B. T. A. 258.

(2) Where the form of the contract is that of an outright sale of the stock from the corporate employer to the employee such as an agreement of sale, with the execution by the employee of his promissory note to pay for the stock, but the facts show that nothing was to be paid by the employee from his own funds for the stock but that it was to be paid out by dividends or earnings credited to the employee from time to time as payments on the stock, such a transaction is treated as extra compensation paid by the corporation to the employee, and if the amounts when added to other payments made to the employee represent reasonable compensation, the corporate employer is entitled to take as a deduction the fair market value of the stock when delivered to the employee. *Alger-Sullivan Lumber Co.* v. *Commissioner*, 57 Fed. (2d) 3; *Hudson Motor Car Co.* v. *United States*, 3 Fed. Supp. 834; *Indianapolis Glove Co.* v. *United States*, 96 Fed. (2d) 816.

(3) Where the contract shows that the employee is to make part of the payment for the stock which is to be acquired by him out of his own funds, either in the form of cash payments or by periodical deductions from his regular salary, and the remainder of the agreed price is to be paid in the form of credits to the employees' accounts, such credits to be measured in some cases by dividends which are paid upon issued and outstanding stock, in other cases by propor-

tionate net earnings of the corporation to be applied to the purchased stock, the contract is treated as one of composite purchase and sale and of compensation. In such a case, without more, the employee is not taxed with the excess fair market value of the stock over the price paid for it in the form of cash payments and the application of credits to his account. He is taxed as income with the actual credits made to his account on the purchase price, but does not pay any tax on the excess fair market value over the price paid for the stock, unless this excess fair market value is actually realized in the form of a sale. Cf. *Gordon M. Evans*, 38 B. T. A. 1406; *Omaha National Bank* v. *Commissioner*, 75 Fed. (2d) 434.

In the *Gordon M. Evans* case we pointed out in our findings of fact that the Kelvinator Corporation, which was the corporate employer, made no deduction on its books and claimed no deduction on its Federal income tax returns as compensation paid with respect to the stock sold under the option agreements. It did deduct as extra compensation, however, the amounts of the "earning credits" entered on its books to the accounts of the employees. On the facts of that case, we held that the taxpayer, Evans, who was the employee who had purchased the stock, was not taxable on the $26,500 which the Commissioner had added to his gross income on account of the fact that the 3,000 shares of Kelvinator stock which Evans had purchased under the plan at $8 per share, had a fair market value $26,500 greater at the time the stock was delivered to Evans than the purchase price which he had paid for it.

Although in the *Evans* case we did not have the corporate employer, the Kelvinator Co., before us claiming a deduction as compensation paid out to an employee, this $26,500 in question, it seems certain that, if we had had the Kelvinator Co. before us, the same logic that holds the $26,500 was not income to Evans would compel a holding that it was not an allowable deduction as compensation paid out by the corporation.

The facts in the instant case show that petitioner, like the Kelvinator Co. in the *Evans* case, did not deduct from its income tax return the excess fair market value of the stock at the time it was delivered over the price which the employee had paid for it, including the credits placed to his accounts. Petitioner in the instant case, like the Kelvinator Co. in the *Evans* case, has deducted from its income tax returns the earnings credit entered on its books to the accounts of the employees.

In our findings of fact it is shown that in 1929 when the stock was delivered to the employee-purchasers petitioner sent each of them a statement which showed just how much of the agreed purchase price had been paid by deductions from the stockholders' regular salary

and just how much had been paid by earnings credits placed to the credit of the purchasing employees' accounts. This notice called the employees' attention to the fact that the earnings credits which had been placed to the credit of the purchasing employees' accounts should be returned as taxable income. Nothing was said in these notices to the employees to the effect that the excess fair market value over the purchase price was to be treated as increased compensation to the employee. In fact there is nothing in the stipulated facts which shows that there was any agreement or understanding between petitioner and its employees that it should be so treated.

In this respect the instant case appears to differ in this important respect from the facts in *W. M. Ritter Lumber Co.*, 30 B. T. A. 231, 251, 274 (issue No. 22), and is therefore distinguishable. In the latter case, in distinguishing it from the case of *Gardner-Denver Co.*, 27 B. T. A. 1171, we said:

* * * However in the present controversy, the circumstances and conditions surrounding the execution of each contract disclose that the intention of the parties was not only a purchase and sale of stock but in addition thereto and primarily, the payment by the Ritter Co. of a stock bonus, as compensation for services actually rendered. The amount of this bonus was predetermined to be the difference between the purchase price and the market value of the number of shares allotted to each employee.

While we recognize of course that the treatment by the parties of the transactions on their books and income tax returns is by no means conclusive, nevertheless in the instant case, taken in connection with other facts and circumstances, it is persuasive as to the agreement and understanding between the parties. As has already been pointed out, petitioner took the sum of $276,631.48 as a deduction on its income tax return for compensation paid to its employees in the form of credits to their accounts on the stock which was delivered to the employees in 1929. Petitioner now wants to increase this deduction to $509,428, which, if allowed, would not only include the $276,631.48 actually credited to the employees' accounts but would also include the excess of fair market value of the stock at the time it was delivered over the $333,374 which had been deducted from the employees' accounts and the $276,631.48 which had been credited as above stated.

For reasons which we have endeavored to state, we think this additional deduction should not be allowed. Petitioner kept its books and made its income tax returns on an accrual basis and under ordinary circumstances the deduction to which petitioner would be entitled in 1929 would be the $270,202.67, mentioned in petitioner's assignment of error (d). This amount was what petitioner actually credited in 1929 to employees' accounts on stock purchases for all years including the year 1929. The $276,631.48 which we have

said should be allowed as a deduction represents not only the amounts credited in 1929 to employees' accounts on the 10,342 shares of stock actually delivered in that year, but credits which had been made in former years to this same stock. The credits in former years respecting these 10,342 shares had not been deducted from petitioner's income tax returns because they were only tentative. If the employee quit the service of the company, as actually a good many of them did, then the credits lapsed back into the company's treasury and the retiring employee received only the amounts which had actually been deducted from his pay plus 5 percent interest.

Therefore the credits were not regarded as final and complete until the agreed purchase was completed. Then the stock was turned over to the employee and it was unconditionally his property. As stated in our findings of fact, 10,342 shares of stock were delivered in 1929 to employees by virtue of their subscriptions in 1926 and 1927. As to these shares, $276,631.48 had been credited to employees' accounts in 1929 and prior years to apply on the purchase price. It is this amount which we hold petitioner is entitled to deduct from its gross income in the taxable year under the provisions of section 23 (a) of the Revenue Act of 1928. On this point, as of what time the deduction should be allowed, cf. *Alger-Sullivan Lumber Co.* v. *Commissioner, supra; Hudson Motor Car Co.* v. *United States, supra; Indianapolis Glove Co.* v. *United States, supra.*

Reviewed by the Board.

*Decision will be entered under Rule 50.*